748

## A. B. Farquhar Company, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 37695.   Filed June 27, 1957.

John F. Greaney, Esq., for the petitioner.
William T. Holloran, Esq., for the respondent.

OPINION.

RICE, *Judge:* In support of its claims for excess profits tax relief under section 722 (b) (4),[3] petitioner alleges it effected a change in the character of its business during the base period by the introduction of new products. Because of that change, it contends its average base period net income does not reflect normal operations of the business for the entire base period. It argues that its development and sale of the agricultural implements enumerated in our findings, its establishment of a hydraulic press department, and its entry into the metal-working press field served to constitute a difference in products furnished. It further contends that had these products been introduced 2 years earlier, its sales volume by the end of 1939 would have reached at least $3,000,000. It concludes that respondent erroneously determined it was entitled to only partial relief under 722 (b) (4), when, in fact, upon proper application of the 2-year push-back rule, its constructive average base period net income for the years 1940, 1941, and 1942, with adjustments for 1940, would have been at least $200,000.

Respondent's position is that, in view of petitioner's history as a manufacturer of farm equipment, the improvements made to its general line of agricultural products did not constitute a difference in products furnished; and that the changes constituted only routine engineering changes in products already manufactured, and did not constitute a substantial departure from the character of the business then being carried on. *Pelton & Crane Co.*, 20 T. C. 967 (1953); *Avey Drilling Machine Co.*, 16 T. C. 1281 (1951); *Stonhard Co.*, 13 T. C. 790 (1949). He further submits the manufacture and sale by petitioner of

---

[3] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purpose of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor, with the result that the competition of such competitor was eliminated or diminished. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, or any acquisition before May 31, 1941, from a competitor engaged in the dissemination of information through the public press, of substantially all the assets of such competitor employed in such business with the result that competition between the taxpayer and the competitor existing before January 1, 1940, was eliminated, shall be deemed to be a change on December 31, 1939, in the character of the business, or * * *

hydraulic presses of various types throughout the period 1917 to 1942 rebuts the contention that they were new products within the contemplation of the statute; and that, in any event, petitioner's attempt to distinguish the presses manufactured during the base period years from those previously manufactured on the ground that the former were metal-working presses is without merit, since the record contains no evidence as to the number of metal-working presses produced or the amounts realized upon their sale. He therefore contends that petitioner did not change the character of its business immediately prior to or during the base period by furnishing new or different products; that its average base period net income is not an inadequate standard of normal earnings; and that it is not entitled to any relief under section 722 (b) (4) of the Code. He concedes, as to these affirmative issues, that he bears the burden of proof. We are of the opinion he has carried that burden.

Since World War I, petitioner consistently manufactured hydraulic presses of one type or another for various industries. In view of that fact, the mere establishment of a hydraulic press department does not constitute a qualifying change in the character of its business. Its curtailment of hydraulic press production during the depressed period of the early 1930's and reentry into that market when it evidenced an upswing, also fails to qualify it for the relief sought. *A. B. Frank Co.*, 19 T. C. 174 (1952), affd. 211 F. 2d 497 (C. A. 5, 1954). More persuasive is its contention that the introduction of metal-forming presses meets the new product requirement of section 722 (b) (4). However, it is well established that a change in the character of a taxpayer's business must be substantial, *and* a causal connection must exist between the qualifying factors and an increased level of earnings. *Union Parts Mfg. Co.*, 24 T. C. 775 (1955). Here, even if we assume a substantial change occurred, the facts of this record indicate that petitioner's increased activity in the hydraulic press field and the increased income therefrom stemmed from its contracts with the Federal Government and its production of powder presses, rather than from the production and sale of metal-forming presses. It, therefore, follows that neither the establishment by petitioner of its hydraulic press department, nor its entry into the metal-forming press field, are factors which entitle it to relief under section 722 (b) (4).

We also think the evidence justifies a conclusion that petitioner did not change the character of its business by reason of the development and sale of "new" agricultural implements. What we said in *Avey Drilling Machine Co.*, *supra*, has equal application here. In that case, in holding the development and sale of a high speed drill by the manufacturer of precision drills did not constitute a difference in products furnished, we said, at page 1298:

The changes, we think, cannot be characterized as more than improvements. Avey was in the business of building precision drilling machines used to drill small holes in metal. The new machines served the same purpose as the old and, generally, were sold to customers in the same industries as before. A change in character, within the intent of the statute, must be a substantial departure from the preexisting nature of the business.

Here, petitioner was in the business of manufacturing agricultural tools; more specifically, dusters, sprayers, potato diggers, transplanters, and hay balers. The "new" products, while constituting more efficient pieces of equipment, in fact served the same purposes as the old, and clearly reached the same markets. We are of the opinion that the changes made were, as respondent contends, only improvements in existing products. Moreover, the "new" products fitted into the general line of products being sold by the petitioner. They were not a "substantial departure from the preexisting nature of the business" in which petitioner was then engaged. We, therefore, conclude that petitioner did not change the character of its business within the meaning of section 722 (b) (4) by reason of its development and sale of the designated "new" agricultural products. *Pelton & Crane Co., supra; Avey Drilling Machine Co., supra;* and *Stonhard Co., supra.*

Since petitioner did not change the character of its business immediately prior to or during the base period, and its average base period net income is not an inadequate standard of normal earnings for that period, its excess profits taxes, as computed without benefit of section 722, are not excessive and discriminatory.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*